IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Marcia S. Krieger

Civil Action No. 18-cv-02118-MSK-KLM

KACEM M. ANDALIB,

    Plaintiff,

v.

JBS USA, LLC,
RIGO MENDIOLA, and
ANTHONY RICKOFF,

    Defendants.

___

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**
___

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 12)**, Mr. Andalib's response **(# 21)**, and the Defendants' reply **(# 23)**.

## FACTS

Mr. Andalib's 41-page Complaint **(# 2)** is lengthy and contains a considerable amount of detail and argument, but its pertinent allegations can be succinctly summarized. Mr. Andalib, who is of Moroccan national origin and an adherent of Islam, was hired by Defendant JBS USA ("JBS") in October 2014 to work in JBS' beef processing plant in Greely, Colorado. Mr. Andalib was soon promoted to the position of HR Supervisor.

In or about April 2017, JBS hired Defendant Anthony Rickoff as a trainer in the HR department. Shortly thereafter, during a discussion about the Trump administration's newly-enacted ban on Muslim immigration to the United States, Mr. Rickoff stated to Mr. Andalib that

1

"it's all your fault, you freaking terrorists," apparently referring to Mr. Andalib's ancestry, Moroccan national origin, and/or Islamic faith. Mr. Andalib complained about Mr. Rickoff's comment to Defendant Rigo Mendiola, JBS' HR Director. Mr. Mendiola told Mr. Rickoff about Mr. Andalib's complaint, but otherwise took no action to investigate or redress the situation.

A few days later, JBS accepted applications for an open HR Manager position. Mr. Andalib applied, but Mr. Mendiola instead gave the position to Mr. Rickoff, making him Mr. Andalib's direct supervisor. Mr. Rickoff began treating Mr. Andalib less-favorably than he treated white and non-Muslim colleagues by "ordering him around, dismissing and denigrating his accomplishments while praising his colleagues, keeping him out of the loop on important information[,] and setting him up for failure."

In October 2017, an employee from the Fleshers Department at JBS came to the HR office on a personnel matter. At the conclusion of that matter, Mr. Rickoff, mistakenly believing that the employee worked in the Fabrication Department, called a Fabrication Department supervisor to escort the employee back to that department. Mr. Andalib attempted to correct Mr. Rickoff's mistake, but Mr. Rickoff ignored him. Later, when it became clear that the employee had been sent to the wrong department, Mr. Rickoff wrote an e-mail to Mr. Mendiola and others, falsely blaming Mr. Andalib for the mistake. Mr. Andalib wrote to Mr. Mendiola, again complaining about the "terrorist" comment and Mr. Rickoff's discrimination against him. Mr. Mendiola did not investigate the matter, but simply referred it to JBS' Compliance Department. Although the Compliance Department interviewed Mr. Andalib about his complaint, JBS apparently took no further action.

Thereafter, Mr. Mendiola treated Mr. Andalib less-favorably than other HR employees, refusing his request for issuance of a laptop that was routinely approved for other employees and

rejecting Mr. Andalib's request to participate in training programs. In early 2018, Mr. Mendiola informed Mr. Andalib that, unlike other HR employees, he would not be awarded the annual bonus for 2017. Mr. Mendiola also issued Mr. Andalib a disciplinary notice for poor performance.

During this period, Mr. Rickoff instructed HR employees to move Mr. Andalib's files and belongings to a desk at the back of the office. Mr. Rickoff criticized Mr. Andalib for using the bathroom. Mr. Andalib again complained to Mr. Mendiola about Mr. Rickoff's treatment of him, but nothing was done. Some time later, Mr. Rickoff directed the termination of a Muslim employee of Somali origin. Mr. Andalib asked why the employee was being terminated, and Mr. Rickoff replied that "I'm doing my share of making America great again." Mr. Andalib understood this comment to reflect that Mr. Rickoff was terminating the employee because of the employee's race, religion, and/or national origin. On another occasion, Mr. Andalib and a fellow Moroccan employee were speaking to one another in their native language when Mr. Rickoff passed by. Mr. Rickoff stated "if you're going to speak that blah-blah-blah, speak it in Africa."

In April 2018, Mr. Mendiola and Mr. Rickoff each instructed Mr. Andalib to go to the Fabrication Office to investigate a matter involving an employee. When Mr. Andalib arrived, Mr. Rickoff was already there, apparently conducting the investigation. Mr. Rickoff instructed Mr. Andalib to leave the room. Mr. Andalib protested, stating that Mr. Mendiola specifically directed him to conduct the investigation.[1] Mr. Rickoff and the other HR representatives that were present then left the room to have a discussion outside. Mr. Rickoff returned shortly thereafter, falsely accusing Mr. Andalib of closing and locking the office door behind them and

---

[1] Ultimately, it turned out that the investigation Mr. Andalib was to conduct involved a different employee, although Mr. Rickoff never advised Mr. Andalib of this fact.

of raising his voice. On April 6, 2018, JBS suspended Mr. Andalib pending an investigation into the event, and on April 11, 2018, JBS terminated Mr. Andalib's employment.

Based on these facts, Mr. Andalib asserts five causes of action: (i) a claim under Title VII, 42 U.S.C. § 2000e *et seq*., asserting that JBS discriminated against him based on his "race, color, ethnicity, ancestry and/or alienage," national origin and religion, and further that JBS also allowed the creation of a hostile working environment based on these same characteristics; (ii) a claim against all three Defendants under 42 U.S.C. § 1981 and/or § 1983, in that the Defendants discriminated against Mr. Andalib on the basis of his "race, color ethnicity, ancestry and/or alienage"; (iii) a claim under Title VII that JBS retaliated against Mr. Andalib for having complained of discrimination, through the creation of a hostile environment, the refusal to promote him to HR Manager, and ultimately terminating him; (iv) a retaliation claim under 42 U.S.C. § 1981, asserted against all Defendants, based on similar facts; (v) a tort claim sounding in outrageous conduct, presumably under Colorado common law, against Mr. Rickoff for referring to Mr. Andalib as a "terrorist" (and perhaps arising out of the remaining conduct discussed above by Mr. Rickoff) and against JBS vicariously for Mr. Rickoff's action.

The Defendants move **(# 12)** to dismiss some of Mr. Andalib's claims, arguing: (i) Mr. Andalib failed to exhaust his administrative remedies regarding any claims of disparate treatment or hostile environment, insofar as he failed to include such allegations in his EEOC charge; (ii) Mr. Andalib's Section 1983 claim fails because he does not and cannot assert that the Defendants were state actors; (iii) Mr. Andalib's retaliation claim should be limited to his April 2017 complaint to Mr. Mendiola about Mr. Rickoff's "terrorist" comment, and similarly should be limited to the adverse actions of non-promotion and termination, as those are the only actions referenced in his EEOC charge; (iv) that Mr. Andalib's retaliation claim fails to state a claim

4

under Fed. R. Civ. P. 12(b)(6) because he has not adequately alleged a causal connection between his protected conduct and adverse actions; and (v) Mr. Andalib's outrageous conduct claim fails to allege sufficiently outrageous conduct.

## ANALYSIS

### A. Title VII claims

#### 1. Exhaustion

Claims of employment discrimination and retaliation under Title VII are subject to pre-suit exhaustion requirements, such that a plaintiff generally may not bring Title VII claims that were not part of a timely-filed EEOC charge.[2] *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018). Moreover, each discrete act of discrimination or retaliation must be specifically raised and exhausted in a charge. *Id.*

There are limited exceptions to the exhaustion requirement. When an EEOC charge does not specifically describe a particular claim, a court may nevertheless deem the claim exhausted if the court is convinced that the claim in question is one that would reasonably fall within the scope of the EEOC's investigation into the claims actually included in the charge. *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017). In considering this exception, the court must be mindful that EEOC charges are not drafted by attorneys and thus should be given a liberal

---

[2] The 10th Circuit recently clarified that a failure to exhaust is not a jurisdictional defect, but rather, an affirmative defense that can be raised or waived by a defendant employer. *Lincoln*, 900 F.3d at 1185. Thus, JBS' motion attacking Mr. Andalib's claims as unexhausted should have been brought as motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) after JBS answered and raised the defense of failure to exhaust, rather than as a pre-Answer motion under Fed. R. Civ. P. 12(b)(6). However, because Mr. Andalib is fully apprised of the basis for JBS' motion and because the standards under Rule 12(b)(6) and 12(c) are effectively the same, the Court will simply treat JBS' defense as being properly raised and presented under Rule 12(c) here.

construction. *Smith v. Cheyenne Retirement Investors, L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018). The determination of what an EEOC investigation into a charge would encompass is necessarily a fact-specific one. *Id.* at 1165 n. 2.

The charge form completed by Mr. Andalib contains a number of boxes under the heading "Discrimination based on:." For example, there are boxes for "race," "color," "sex," "religion," and so on. Mr. Andalib's charge checks only the "retaliation" box. The narrative portion of his charge reads, in its entirety:

> My employment with the above named Respondent began in October 2014. Around April-May 2017, I complained to my boss (HR Director) about religious discrimination at work. He took no action in response to my complaint. Instead, he retaliated by not selecting me for promotion to HR Manager in July 2017. He denied my bonus in March 2018 and placed me on indefinite suspension on April 6, 201[8]. He terminated my employment on April 11, 2018 without giving an explanation.
>
> I believe I have been retaliated against for complaining against a manager's hate speech against Muslims, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Mr. Andalib's claim sufficiently exhausted his retaliation claims based on the events and actions recited in the narrative. But the charge gives no indication that Mr. Andalib believed that he was being discriminated against on the basis of his race, color, or national origin (or any of the other cognates of those characteristics referred to in Mr. Andalib's Complaint, such as his "alienage" or "ethnicity"). The boxes relating to those classifications are not checked, the narrative does not mention Mr. Andalib's race, color, or national origin, and the narrative does not describe any indication that such factors influenced any of the adverse actions taken against Mr. Andalib. Thus, Mr. Andalib's claims sounding in race or national origin discrimination

6

under Title VII (whether in the form of disparate treatment or hostile environment) are dismissed as unexhausted.

The more difficult question is whether Mr. Andalib's claims premised upon religious discrimination are exhausted. Once again, Mr. Andalib did not check the box indicating that he was complaining that he was discriminated on the basis of religion and the narrative does not indicate that Mr. Andalib is himself a Muslim. The narrative complains of "religious discrimination" and "hate speech against Muslims" thus it is fair to assume that an EEOC investigation into those allegations would entail the investigator asking about the "who" (Mr. Rickoff), "what" (stated that Muslims were "terrorists"), "where" (at work), "when" (in April 2017), and "why" (because he was biased against Muslims). But the answers to those questions would not necessarily prompt an investigator to consider that the adverse actions Mr. Andalib now complains of – non-promotion, denial of a bonus, and suspension/termination – were the result of religious discrimination. The person who dictated those adverse actions (Mr. Mendiola) was not the person who engaged in the anti-Muslim speech, and none of Mr. Andalib's allegations in the charge suggest that Mr. Mendiola shared Mr. Rickoff's religious bias. At worst, the narrative simply suggests that Mr. Mendiola was indifferent to Mr. Andalib's complaints, not that he himself discriminated against Mr. Andalib based on his religion. Accordingly, the Court cannot conclude that claims of religious discrimination on the part of Mr. Mendiola against Mr. Andalib were reasonably within the scope of any investigation into Mr. Andalib's charge. Mr. Andalib's religious discrimination claims under Title VII are similarly dismissed as unexhausted.

    2. Sufficiency

JBS moves to dismiss Mr. Andalib's retaliation claim for failure to state a claim. To state a Title VII retaliation claim, an employee must allege facts demonstrating a *prima facie* claim, showing that: (i) the employee engaged in conduct protected by Title VII, (ii) the employee suffered an adverse action, and (iii) there is a causal connection between the protected conduct and the adverse action. Here, JBS challenges Mr. Andalib's ability to allege a causal connection between his April 2017 complaint and any of the adverse actions against him.

Commonly, employees attempt to show the existence of a causal connection by demonstrating that the adverse action followed closely in time after the protected conduct; the 10th Circuit has held that a six-week gap between the two events might permit an inference of causation, but a gap of three months would not. In the absence of temporal proximity, an employee might instead rely on other evidence giving rise to an inference of causation, such as comments by the decisionmaker reflecting a retaliatory motive. *Davis v. BAE Systems Technology Solutions & Servs., Inc.*, ___ Fed.Appx. ___, 2019 WL 993269 (10th Cir. Feb. 28, 2019).

Mr. Andalib's Complaint alleges that he complained to Mr. Mendiola about Mr. Rickoff's "terrorist" remark on or about May 3, 2017. *Docket* # 2, ¶ 20. He alleges that he applied for the HR Manager position on May 5, 2017 and that Mr. Mendiola selected Mr. Rickoff for that position at some point in "approximately July 2017." *Id.* ¶ 25, 26. Construed in the light most favorably to Mr. Andalib, the temporal relationship between his complaint to Mr. Mendiola and the hiring of Mr. Rickoff might be as short as about two months. The 10th Circuit has found that a gap of two months between protected conduct and adverse action can suffice to support a *prima facie* case of retaliation. *Rivera v. Pitt*, 44 Fed.Appx. 934, 937 (10th Cir. 2002). Moreover, given the closeness in time between Mr. Andalib's protected conduct and his

application for the HR Manager position, it may be possible for Mr. Andalib to show that Mr. Mendiola quickly decided not to hire Mr. Andalib for the position because of Mr. Andalib's recent complaint. Accordingly, Mr. Andalib has stated a sufficient claim for retaliation.

JBS argues that the Court should nevertheless conclude that the other adverse actions – the denial of Mr. Andalib's bonus and his suspension/termination in 2018 – are not temporally connected to his May 3, 2017 complaint to Mr. Mendiola, and thus the retaliation claim predicated on those actions should be dismissed. But Mr. Andalib has adequately alleged that he made multiple complaints of discrimination to Mr. Mendiola after May 2017. The Complaint refers to another complaint Mr. Andalib made to Mr. Mendiola on October 10, 2017, and yet another made to Mr. Mendiola at an unspecified time during "the winter of 2017-2018." *Docket # 2*, ¶ 36, 48-50. Mr. Andalib alleges that Mr. Mendiola denied him his 2017 bonus on March 9, 2018 and terminated him on April 11, 2018. Depending on when this "winter" complaint occurred, it is possible that it was temporally close enough to the denial of a bonus and termination of Mr. Andalib's employment to demonstrate a causal connection. JBS is free to explore the precise timing in discovery and re-raise this argument via summary judgment if necessary.[3]

Accordingly, the Court dismisses all of Mr. Andalib's Title VII claims except for his retaliation claim.

---

[3] The Court rejects JBS' argument that because Mr. Andalib's did not recite these subsequent instances of protected conduct in his EEOC charge, Mr. Andalib may not assert them now. An EEOC charge is not the equivalent of a complaint and need not recite all pertinent events with the same specificity. Here, Mr. Andalib sufficiently notified JBS of the nature of his claim (retaliation) and the particular adverse actions that resulted. The Court cannot conclude that JBS was somehow prejudiced in its ability to evaluate that charge by Mr. Andalib not reciting additional instances of protected conduct. *See e.g. Perkins v. Federal Fruit & Produce Co.*, 945 F.Supp.2d 1225, 1247 (D.Colo. 2013).

### B. Section 1983 claim

Claims under 42 U.S.C. § 1983 may only be brought against defendants who act "under color" of state law. Thus, such claims require that the defendant's actions be "fairly attributable to the state" before a claim under § 1983 will lie. *See Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Purely private conduct, no matter how discriminatory or wrongful, is not redressible via Section 1983. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

Neither JBS nor the individual Defendants are state actors and any purported Section 1983 claim against them is frivolous. Surprisingly, Mr. Andalib does not simply abandon his Section 1983 claim in response to the Defendants' motion; instead, he attempts to rescue it by arguing, for the first time in his response brief, that "JBS receives government contracts for the production and supply of beef . . . to both state and government agencies." This argument fails for two reasons. First, JBS' purported contracts with governmental agencies are not alleged anywhere in the Complaint, leaving the essential element of state action unsupported by well-pled facts. Second, even if Mr. Andalib's argument were factually-supported, it would still fail as a matter of law. Although the Supreme Court has recognized that private actors can take on the mantle of state action in certain limited circumstances, the mere fact that a private actor <u>contracts</u> with the state – even a private actor who derives "virtually all" of its income from state contracts – does not, of itself, suffice to create state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (privately-run school that contracted with state to educate disabled students was not a state actor for purposes of Title VII claim by discharged teacher). Mr. Andalib's attempt to compare his situation to that of *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), fails for the very reasons that the Supreme Court distinguished the *Burton* case in *Rendell-Baker*:

the private actor in *Burton* was located on public property, its rent payments directly subsidized the state building where it was located, and the state specifically profited from the private actor's discrimination. *See* 457 U.S. at 842-43. Mr. Andalib does not argue that he could show that JBS occupies public property, that it subsidizes governmental functions, and that states actively profit from its discrimination against Mr. Andalib. Thus, Mr. Andalib's § 1983 claim is dismissed under Fed. R. Civ. P. 12(b)(6).

The Court finds that Mr. Andalib's arguments in support of a § 1983 claim to be patently frivolous, and agrees with the Defendants that they should recover reasonable attorney fees they incurred in defending against that claim. 42 U.S.C. § 1988 (allowing such fees, in the court's discretion, to prevailing parties on Section 1983 claims); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (allowing such fees to be awarded upon a finding that the plaintiff's claim was "frivolous, unreasonable, or without foundation"). However, it is essential to strictly limit recovery to fees to those specifically traceable to the Section 1983 claim, alone. Mr. Andalib's Complaint invokes both 42 U.S.C. § 1981 and 42 U.S.C. § 1983 within the same claim, and JBS has not argued that a § 1981 claim for race discrimination – which does not require state action – is not cognizable under the facts alleged here. Thus, it may be difficult for JBS to isolate the fees it incurred in challenging the § 1983 claim itself, but the Court will not attempt to assess that situation prematurely. Within 14 days of this Order, JBS may submit a motion for attorney fees that reflects the specific fees that it incurred in moving to dismiss only the § 1983 claim (as distinct from any other claim). Mr. Andalib will have 7 days from the date that such motion is filed to respond. The Court will then consider what, if any, fee award is appropriate.

**C. Outrageous conduct**

Finally, the Court turns to Mr. Andalib's outrageous conduct claim. Under Colorado law, a plaintiff may recover where he is subjected to "conduct that has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970). Conduct that is simply "unreasonable, unkind, or unfair" does not suffice. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988). In *Grandchamp*, the 10th Circuit explained that a claim for outrageous conduct does not lie simply because the plaintiff has colorably alleged a claim that his employment was terminated for discriminatory reasons prohibited by law. *Id.* at 385. Rather, it explained that the question of whether an employee's termination is sufficiently outrageous turns on the <u>manner</u> in which the employee is terminated – for example, employees that were subjected to physical assaults in the course of their termination could assert a claim for outrageous conduct, but employees who were simply terminated from their jobs and not rehired because of their age could not.

The Court agrees with Mr. Andalib that, as alleged, Mr. Rickoff's statements and actions were juvenile and offensive and that JBS might have violated Title VII by allowing them to continue. And, as noted above, Mr. Andalib may have a colorable claim for unlawful retaliation. But the Court cannot say Mr. Rickoff's words, nor the manner in which Mr. Mendiola effectuated Mr. Andalib's termination, rise to the level of outrageousness necessary to support a tort claim under Colorado law. Accordingly, the Court grants the Defendants' motion and dismisses Mr. Andalib's outrageous conduct claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 12)** is **GRANTED IN PART** and **DENIED IN PART**. Mr. Andalib's Title VII retaliation claim against JBS and §1981 claims race discrimination and retaliation claims against all Defendants will proceed; his remaining claims are dismissed.

Dated this 20th day of May, 2019.

BY THE COURT:

_____

Marcia S. Krieger
Senior United States District Judge