## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02118-MSK-KLM

KACEM M. ANDALIB,

      Plaintiff,

v.

JBS USA, LLC, d/b/a JBS SWIFT & COMPANY;
RIGO MENDIOLA, in his individual and official capacities; and
ANTHONY RICKOFF, in his individual and official capacities,

      Defendants.

---

## MOTION FOR ATTORNEYS' FEES PURSUANT TO THE COURT'S APRIL 3, 2019, AND JULY 10, 2019, ORDERS

---

Defendants JBS USA, LLC n/k/a JBS USA Food Company d/b/a JBS Swift & Company ("JBS"), Rigo Mendiola, and Anthony Rickoff (collectively "Defendants"), by and through their undersigned counsel, hereby move for recovery of $24,555.00, the reasonable attorneys' fees this Court has already Ordered Defendant is entitled to under Fed. R. Civ. P. 37. Defendant also seeks recovery of $8,180.00 in fees and costs attributable to the search of Mr. Andalib's personal email account for stolen property, as contemplated in the Court's April 3, 2019 Order.

### I.      Certificate of Conferral Pursuant to D.C.COLO.LCivR 7.1

Counsel for Defendants conferred with counsel for Plaintiff concerning the attorneys' fees and costs Defendants intended to seek in the present motion. Counsel for Plaintiff indicated that Plaintiff opposes an award of any fees or costs to Defendants.

## II.    <u>Background</u>

Kacem Andalib ("Plaintiff" or "Andalib"), by and through his legal counsel Eudoxie (Dunia) Dickey, filed the present lawsuit on August 21, 2018, seeking to bring five claims against Defendants in federal court.  [Doc. 2].  Initial disclosures were exchanged by the parties in December 2018 and a scheduling conference was held by the Court on December 18, 2018.  A Scheduling Order was entered by the Court that same day.  [Doc. 25].  Under the Court's Order, the discovery cut-off was set at July 26, 2019, and the parties were ordered to serve any written discovery requests at least 45 days before that deadline, June 11, 2019.  *Id.*  On the same day as the Scheduling Conference, Defendants served their First Set of Interrogatories and Requests for Production of Documents to Plaintiff.  Ex. A.  Responses to these requests were due on January 17, 2019.  Instead of responding, on the day those responses were due, Ms. Dickey requested a "two week extension, through January 31st" on behalf of the Plaintiff, which Defendants did not object to.  Ex. B.  On July 31, 2019, again on the day that the responses were due, Ms. Dickey requested a second extension for "an additional week."  *Id.*  Defendants did not "oppose an additional 1-week extension" but reminded Ms. Dickey of her obligation to file a motion with the Court, since the parties had already stipulated to one extension.  *Id.*  On February 4, 2019, Plaintiff, through his counsel, filed Plaintiff's Unopposed Motion for Extension to File Response to Defendants' First Set of Discovery Requests.  [Doc. 30]; *accord* Ex. C.  In that Motion, Plaintiff, through his counsel, expressly acknowledged that his discovery responses were now due on "February 7, 2019." [Doc. 30].  On February 7, 2019, Defendants received nothing from Plaintiff or his counsel.  Thus, on February 8, 2019, counsel for Defendants were forced to email Ms. Dickey and request the missing discovery responses.  Ex. D.  In that email, counsel for

Active/50399738.1

Defendants specifically requested that Plaintiff, at a minimum, "send the signed releases immediately so that we may proceed to collect relevant third party records without further delay." *Id.* At that time, Defendants also attempted to schedule Mr. Andalib's deposition in March 2019. *Id.* Late in the evening of Friday, February 8, 2019, Ms. Dickey sent incomplete discovery responses and informed counsel for the Defendants that "an additional Supplemental Response will be provided next week." *Id.* Plaintiff did not provide any of the requested releases at that time and did not provide any information concerning Plaintiff's availability for his deposition. *Id.*

On Tuesday, February 12, 2019, 26 days after the responses were originally due and in response to a specific request by Defendants' counsel, Ms. Dickey indicated that the missing materials from Plaintiff's discovery responses would be provided "by Monday, February 25th." Ex. E. On February 25, 2019, Defendants received nothing from Plaintiff or his counsel. Thus, on February 27, 2019, Defendants sent a conferral letter in accordance with Fed. R. Civ. P. 26(g), Fed. R. Civ. P. 37, D.C.COLO.LCivR 7.1(a) and the Court's Requirements of Practice Before Magistrate Judge Mix. Ex. E. On March 1, 2019, 43 days after they were originally due, Ms. Dickey provided Plaintiff's First Supplemental Responses to Defendants' First Written Discovery Requests. Ex. F. None of the third party releases were included, nor was any information concerning Mr. Andalib's availability for his deposition provided. *Id.* Thus, on March 5, 2019, Defendants were forced to incur the cost of having their counsel send a second formal conferral letter regarding Plaintiff's dilatory discovery conduct and copious deficiencies in the discovery responses that Plaintiff haUd sent. Ex. G. In this letter, Defendants requested "complete and substantiated responses, not just boilerplate objections, to all of the discovery

[requests] JBS has served to date before the close of business on this Thursday March 7, 2019"

so that the Defendants would not be "forced to take these matters to the Court." *Id.* Defendants

were also forced to incur the cost of serving third party subpoenas in an effort to obtain the third

party records relevant to this matter, as Mr. Andalib had again failed to provide the releases

requested back in December of 2018. Ex. H.

On March 15, 2019, Plaintiff provided his Second Supplemental Discovery Responses.

Ex. I. However, these responses failed to address the majority of the issues raised in the several

conferral emails and letters Defendants had sent or provide any information concerning Mr.

Andalib's availability for his deposition. *Id.* Thus, on March 20, 2019, Defendants attempted to

schedule Mr. Andalib's deposition for May 30, 2019, hoping that this would give the parties

enough time before the deposition to fully resolve the outstanding discovery issues. Ex. J. In

response, Ms. Dickey proposed that Mr. Andalib's deposition be scheduled "in the second half of

June." *Id.* On March 21, 2019, counsel for Defendants requested that Ms. Dickey "give us a few

dates where you and your client are available in May." *Id.* In response, on March 27, 2019, Ms.

Dickey for the first time informed counsel for Defendants that Plaintiff "will be out of the

country in May through the first half of June." *Id.* On April 8, 2019, counsel for Defendants

reiterated its request that they "depose Mr. Andalib **before** he leaves the country." *Id.* Instead,

on April 11, 2019, Ms. Dickey informed counsel for Defendants that Mr. Andalib had

"solidified" his plans to leave the country in the middle of discovery and that his "exact travel

dates" would be "from May 2nd/3rd to mid-June 2019." Ex. K. Thus, counsel for Defendants

proposed that Mr. Andalib's deposition be held just before Mr. Andalib left the country, a

request which was again rejected by Plaintiff and his counsel. *Id.* On April 22, 2019, 74 days

after Defendants had requested Mr. Andalib's availability for a *March 2019* deposition, Mr. Andalib agreed to make himself available for his deposition on June 18, 2019, just 39 days before discovery was scheduled to close.  *Id.*

Instead of using this delay to resolve the outstanding written discovery issues, as requested by Defendants, Plaintiff and his counsel essentially disappeared and (with limited exception) failed to respond to any of Defendants' communication regarding this case.  On June 13, 2019, just five days before Mr. Andalib's deposition was schedule to take place, after counsel for Defendants had sent six separate emails to Plaintiff's counsel over the span of 49 days with no response from Plaintiff, Defendants were forced to send another conferral letter to Ms. Dickey concerning the issues previously raised, but never addressed.  Ex. L.  Ms. Dickey did not respond to that letter before she showed up for her client's deposition on June 18, 2019.  Thus, on June 18, 2019, while Ms. Dickey and Mr. Andalib were physically present at Sherman & Howard's office, counsel for Defendants attempted to resolve as many of the outstanding discovery issues as possible and, ultimately, requested Ms. Dickey's availability for a call to the Court concerning all of the remaining outstanding materials.  The parties originally agreed to call the Court the morning of Friday, June 21, 2019, but due to an unexpected conflict, counsel for Defendants was forced to reschedule.  Ex. M.  At that time, counsel for Defendants "strongly encourage[d Ms. Dickey] to take this additional time to provide the outstanding materials . . . so a call becomes unnecessary."  *Id.*  Although the call was rescheduled, no substantive response regarding the missing materials was provided.  *Id.*  Instead, counsel for Defendants was required to spend the time necessary to compile the discovery dispute chart and relevant accompanying materials to submit to the Court, which were submitted on June 25, 2019.  Ex. N.  A hearing was then

scheduled for July 10, 2019.  [Doc. 42].  No substantive correspondence was received from Plaintiff or his counsel before that hearing regarding the issues to be addressed therein, all of which were explicitly outlined (again) for Plaintiff in the correspondence to the Court.

On July 10, 2019, counsel for the Defendants summarized the information concerning Plaintiff's discovery conduct for the Court again and counsel for Plaintiff was given an opportunity to respond.  In response, Ms. Dickey stated "we don't dispute anything that defense counsel has said and, you know, we realize that these delays in providing various items, you know, have been dilatory."  07.10.19 Hr. Tr. 12:8-12.  Thus, counsel for Defendants made an oral motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 37, which was granted by the Court on the record that day.

Contained within the limited materials that Defendants received from Plaintiff on March 1, 2019, were four separate electronic message chains from Mr. Andalib's JBS e-mail account which Mr. Andalib had improperly forwarded to his personal e-mail account during his employment at JBS.  In light of this, on March 5, 2019, Defendants sent a letter to Plaintiff and his counsel requesting "to obtain a forensic copy of any and all personal email accounts Mr. Andalib used during his time as a JBS employee."  Ex. O.  In response, on March 8, 2019, Ms. Dickey represented on behalf of her client that "Mr. Andalib has already provided every single email, text message or other document in his possession that in any way relates to JBS. . ."  Ex. P.  Although the parties attempted to resolve this issue themselves, it was agreed that Court assistance was required.  *Id.*  On March 18, 2019, while conferring regarding scheduling a hearing before the Court, Ms. Dickey again represented that "Mr. Andalib has already provided each and every single email, text or other document in his possession with [sic], relating or

6

Active/50399738.1

concerning to JBS in response to Defendants' First Set of Interrogatories and Requests for Production." *Id.* (emphasis in original).[1]

The parties called chambers on March 19, 2019, and a hearing on this matter was schedule for April 3, 2019. [Doc. 32].  At that hearing, counsel for Defendants requested a forensic review of Mr. Andalib's personal email account, explaining that "every time he goes back to his email account [Mr. Andalib] finds something else that should not be in there that is the property of JBS that he then forwards on to his counsel."  04.03.19 Hr. Tr. 8:22-25.  In response, and in an effort to avoid this forensic review, Ms. Dickey specifically represented to the Court that "Plaintiff has already disclosed to Defendants every single email, every single communication, or other document in his possession, that either was forwarded from his JBS email account, is a communication with a current or former JBS employee, or in any way relates to JBS, either from during the time of his employment, and even following his employment." 04.03.19 Hr. Tr. 15:9-15.  The Court granted Defendants' request to search Mr. Andalib's email, though it expressly held that "it's going to have to be done fairly quickly."  *Id.* at 26:7-8. Specifically, the Court ordered that "this forensic endeavor must be accomplished within four weeks."  *Id.* at 27:19-22.  The Court also held that although the "Defendant would bear the full cost of that examination initially, until such time as the results are achieved," if those results showed "that the Plaintiff forwarded to himself [emails] from his work email and has not previously disclosed [those emails]" then the "cost of the forensic examination should be shifted to the Plaintiff because of his deception."  *Id.* at 25:5-12.  The same day as the hearing, the Court

---

[1] This statement was also proven false during Mr. Andalib's deposition, in which multiple relevant and responsive documents, including (but not limited to) specifically text messages, were identified by Mr. Andalib as being in existence but not having been provided.

7

issued an Order memorializing it ruling and specifically instructing that the independent forensic examiner retained by Defendants must "view and retrieve emails from Plaintiff's work account to his personal email account and provide copies of those emails to both counsel **no later than May 1, 2019.**" [Doc. 33 (emphasis in original)].

Defendants worked diligently to retain an independent third party forensic analyst, Forensic Pursuit, to pull these emails within the allotted time.  However, *after* the hearing before the Court and *after* Forensic Pursuit had been retained, Mr. Andalib's counsel for the first time raised concerns that a search for all emails forwarded from JBS's systems to Mr. Andlaib's personal email might also pull emails containing attorney-client communication between Mr. Andalib and his legal counsel.  She "raised" these concerns by directly contacting Forensic Pursuit and instructing them to provide all of the emails pulled from Mr. Andalib's account directly to her and <u>not</u> to counsel for the Defendants, despite the Court's clear order that the "independent examiner" was to "provide copies of those emails to both counsel."  [Doc. 33]. When Forensic Pursuit contacted counsel for Defendants concerning these instructions, she reached out to opposing counsel to discuss Ms. Dickey's concern.  To address this concern, Defendants agreed to have Forensic Pursuit cull out any emails to or from Mr. Andalib's legal counsel's email address from those otherwise indicating that they had been forwarded from a JBS account.  Ex. Q.  Such emails would not be provided to Defendants until after Mr. Andalib's attorney had an opportunity to review what would otherwise be pulled and determine whether she believed any redactions would be necessary before those emails were provided to us.  If so, she would need to redact any privileged information from the emails and then provide both the emails and a privilege log.  This search was completed by Forensic Pursuit on April 26, 2019.

Ex. R.  Forensic Pursuit's search uncovered approximately 330 emails Mr. Andalib had improperly forwarded from his JBS account that were immediately provided to Defendants, as they contained no indication they had been sent to or from his legal counsel, and an additional 25 emails which contained some reference to Mr. Andalib's legal counsel's email address and, thus, were not provided to Defendants at that time.  Ex. S.  Despite repeated requests by Defendants for production of these final 25 emails, they were not provided, nor was any explanation given regarding the failure to produced them, until after the hearing on July 10, 2019, in which the Court ordered that they be produced before 5:00 p.m. on July 12, 2019.  [Doc. 47].  Some of the other materials that were ordered to be produced before 5:00 p.m. on July 12, 2019, though not all, were provided at 11:51 p.m. last Friday.  Ex. T.  Certain materials are still outstanding.  *Id.*

### III.   <u>Several different provisions of Fed. R. Civ. P. 37 require the Court to award fees under the present circumstances.</u>

Where, as here, a Motion to Compel is granted, Fed. R. Civ. P. 37(a)(5) states that "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the . . . attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Similarly, where a party "fails to obey an order to provide or permit discovery," such as occurred with regard to the emails pulled from Mr. Andalib's personal email account here, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified. . ." Fed. R. Civ. P. 37(b)(2).  Fed. R. Civ. P. 37(d) also requires an award of attorneys' fees under the present circumstances.  Specifically, where "a party, after being properly served with

interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written responses . . . the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, cause by the failure, unless the failure was substantially justified. . ."  Fed. R. Civ. P. 37(a)(4) specifically states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and that, under such circumstances, if the deficiencies are not cured, sanctions are appropriate.   Similarly, Magistrate Mix's Requirements of Practice specifically require that the parties "promptly supplement disclosures and discovery responses," a requirement that was completely ignored by Plaintiff and his counsel throughout these proceedings.  Plaintiff's counsel has already admitted, and the Court has already found, that the discovery failures of Ms. Dickey and Mr. Andalib addressed at the July 10, 2019, hearing on Defendants' Motion to Compel were not justified.[2]  As the Court has already found, Defendants are entitled to recover the fees they incurred due to Plaintiff's dilatory discovery conduct.

**IV.    Fees should also be awarded pursuant to Fed. R. Civ. P. 26(g).**

Fed. R. Civ. P. 26(g) requires that the "attorney of record in the attorney's own name" sign "every discovery request, response, or objection" and in so doing, the attorney must certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a discovery request, response, or objection it is consistent with these rules . . . [and] not interposed for any improper purpose. . ."  "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to

---

[2] Despite this acknowledgement, materials ordered to be produced are still outstanding.

Active/50399738.1

pay the reasonable expenses, including attorney's fees, cause by the violation." Fed. R. Civ. P. 26(g)(3).

Each and every discovery response received by Plaintiff and his counsel to date, including the supplement that was provided the evening of Friday, July 12, 2019 in response to the Court's Order on Defendants' Motion to Compel, is replete with improper objections that fail to comply with the Federal Rules of Civil Procedure. *See, e.g.,* Ex. U. "Boilerplate objections are improper. The responding party has the obligation to explain and support its objections." *Kissing Camels Surgery Center, LLC, v. Centura Health Corp.,* No. 12-cv-03012-WJM-NYW, 2016 WL 277721, *2 (D. Colo. Jan. 22, 2016) (internal citations omitted). Under the plain language of the Rules, at a minimum, "an objection must state whether any responsive materials are being withheld on the basis of the objection." *See, e.g.,* Fed. R. Civ. P. 34(b)(2)(B). Indeed, Fed. R. Civ. P. 26(g) specifically prohibits the "abusive practice of objecting to discovery requests reflexively – but not reflectively – and without a factual basis" *Bottoms v. Liberty Life Assur. Co. of Boston,* No. 11-cv-01606-PAB-CBS, 2011 WL 6181423, *7 (D. Colo. Dec. 13, 2011) (internal citations and quotations omitted). Despite this, and despite Defendants' repeated conferral attempts regarding these deficiencies, Plaintiff and his counsel have not even attempted to address this problem.

## V. Defendants are entitled to recover the actual attorneys' fees they incurred due to Plaintiff's theft of JBS property and misrepresentations concerning that theft.

Part and parcel of Plaintiff's discovery abuses was his explicit misrepresentations, through his counsel, to the Court regarding the production of the emails Mr. Andalib improperly forwarded to himself during his employment at JBS. The relevance of those emails to the merits

of the claims and defenses in this case are not at issue in this Motion.   Rather, his misrepresentation regarding his discovery conduct and willful disregard of the Court's April 3, 2019, order are.  The Court has already held that in the event that "the results" of the independent forensic review of Mr. Andalib's personal email account resulted in discovery of "emails that the Plaintiff forwarded to himself from his work email and has not previously disclosed," "the Court would entertain an argument that the cost of the forensic examinant should be shifted to the Plaintiff because of his deception."  04.03.19 Hr. Tr.  25:5-12.  That is exactly what occurred here.

Plaintiff, through his counsel, represented to the Court that the four email chains produced by him prior to the April 3, 2019, hearing, represented "every single email, every single communication, or other document in his possession, that either was forwarded from his JBS email account, is a communication with a current or former JBS employee, or in any way relates to JBS, either from during the time of his employment, and even following his employment."  04.03.19 Hr. Tr.  12:8-12.  This statement was proven unequivocally and insurmountably false by the results of the forensic analysis, which pulled *over three hundred* emails from Mr. Andalib's email account that had been forwarded from his JBS account but never produced.  Ex. S.  This was *after* Mr. Andalib had deleted some of those emails.

The Court has inherent authority to award fees and costs and, under these circumstances it should do so. *See, e.g., Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.  That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial

Active/50399738.1

process.").[3]  Defendants incurred $1,400.00 in costs, *see* Ex. V, and $ 6.780.00 in attorneys' fees directly attributable to the forensic search of Mr. Andalib's email account, all of which should be paid by Plaintiff.

**VI.**     **The fees requested by Defendants are more than reasonable.**

When fees are awarded, as they have been here, the Court must "determine the reasonableness of a fee request" by "calculating the so-called 'lodestar amount' of a fee" which presumptively reflects a "reasonable fee."  *See, e.g. Bunting v. Preferred Homecare,* No. 12-cv-03327-RM-KMT, 2014 WL 1237662, * 1 (D. Colo. Mar. 24, 2016) (*quoting Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998)).  The fees actually incurred by Defendants as a result of Plaintiff's dilatory discovery conduct are significantly lower than what is reasonable under the applicable law.  *See, e.g., White v. Chafin,* No. 13-cv-01761-CMA-MJW, 2016 WL 9735066 (D. Colo. Sept. 23, 2016) (explaining when calculating "the 'lodestar'" the "reasonable hourly rate" part of that calculation is determined by consideration of "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time").  Due to the nature of the case at issue and the client relationship, the rates Defendants' counsel billed, $300 per hour, are well below rates found to be reasonable in a number of other cases, particularly when the experience and locality of the attorneys who billed on this matter are taken into account.  *See, e.g., Arend v. Paez,* No. 12-cv-01270-DDD-SKC, 2019 WL 2726231 (D. Colo. July 1, 2019) (summarizing recent decisions finding rates between $300 and $500 to be reasonable in employment law and civil rights cases "in the Denver area");

---

[3] An award of fees and costs is also appropriate under Fed. R. Civ. P. 37(b)(2) due to Plaintiff's failure to obey the Court's order with regard to the discovery of the materials within Mr. Andalib's personal email account.

Active/50399738.1

Exhibit W (outlining the qualifications of Defendants' counsel and paralegal that billed on this case).

Defendants' counsel carefully scrutinized each of their billing entries and ensured that only amounts reasonably expended were included in its request.  Ex. X.  Indeed, all amounts sought were billed to, and paid by Defendants.  *Id.*; *see Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.,* 158 F.3d 1243, 1250 (10th Cir. 1998) ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable.").  All that Defendants are seeking, and all that they are entitled to, is recovery of those fees incurred as a result of Plaintiff's dilatory discovery conduct, as required under the Federal Rules.

### VII.  Conclusion.

Defendants respectfully request that an award be entered by the Court ordering Plaintiff and/or his counsel to pay the following:

A. $11,385.00 in attorneys' fees caused by Plaintiff's failure to properly, and timely, engage in discovery;

B. $ 13,170.00 in attorneys' fees incurred in making Defendants' Motion to Compel, which was granted on July 10, 2019;

C. $6,780.00 in attorneys' fees incurred as a result of Plaintiff's theft of Company property and the resulting need to conduct a forensic examination of his personal email account and deception regarding the same; and

D. $ 1,400.00 in costs directly attributable to the forensic review of Mr. Andalib's personal email account in light of Plaintiff's deception regarding his production of the electronic property Mr. Andalib wrongfully took from JBS during discovery.

DATED this 17th day of July, 2019.

Respectfully submitted,

*s/ Beth Ann Lennon*

Heather J. Vickles
Beth Ann Lennon
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO 80202
Telephone: 303-297-2900
Fax: 303-298-0940
Email: hvickles@shermanhoward.com
         blennon@shermanhoward.com

*Attorneys for Defendants*

Active/50399738.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2019, I electronically filed the foregoing **MOTION FOR ATTORNEYS' FEES PURSUANT TO THE COURT'S APRIL 3, 2019, AND JULY 10, 2019, ORDERS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> Eudoxie (Dunia) Dickey
> Civil Rights & Employment Law Advocates, LLC
> 2300 Walnut Street, #123
> Denver, CO 80203
> Email:  CivilRightsAdvocatesLLC@gmail.com

*s/ Laura J. Kostyk*
Laura J. Kostyk, Legal Secretary

16